UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Docket No. 2:21-mj-17-JHR |
| ) | |
| NATHAN LIBBY ) | 14 U.S.C. § 521(c) |

### AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Mark Root, being duly sworn, hereby depose and state as follows:

1. This affidavit is made in support of a criminal complaint charging Nathan Libby with a violation of 14 U.S.C. § 521(c): Transmission of a Hoax Distress Call.

2. I am a Federal Agent, authorized to investigate violations of laws of the United States. I am a Special Agent ("SA") with the United States Coast Guard Investigative Service ("CGIS"). I am currently assigned to CGIS Resident Agent Office, Portland, Maine. I am a graduate of the Federal Law Enforcement Training Center, Criminal Investigator Training Program and numerous other training programs related to criminal investigations. Prior to becoming a Special Agent, I was a qualified United States Coast Guard ("USCG") Boarding Officer for approximately eight years assigned to the USCGC ACTIVE, Port Angeles, WA, USCG Station Oswego, NY, USCGC FLYINGFISH, Boston, MA. During these tours of duty, I logged hundreds of maritime law enforcement boardings, including boardings of foreign flagged vessels. As a SA with CGIS, I have participated in numerous criminal investigations of individuals who are in violation of laws and statutes of the United States and the United States Code of Federal Regulations.

3. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint. The facts set forth in this affidavit are based upon my personal knowledge,

information obtained during my participation in this investigation, my conversations with other law enforcement personnel, my review of police reports, other documents and computer records related to this investigation, and information gained through my training and experience.

## PROBABLE CAUSE

4. On December 3, 2020, at approximately 6:36 a.m., the Coast Guard received a "May Day, May Day" distress call on VHF marine radio station 16. The Coast Guard dispatcher responded to the distress call and spoke with a male for approximately 1-2 minutes. In substance, the caller stated that "we lost our rudder" and "we are taking on water fast" and "our pumps can't keep up with this". He indicated three persons were aboard. The caller further stated that the boat was a 42-foot muscle ridge. The dispatcher asked for GPS coordinates. The caller did not have any coordinates but said he was in Spruce Head Harbor and was going to try to get the boat to Atwood's float.

5. State of Maine Marine Patrol Officer Nicholas Stillwell arrived at Atwood's Lobster Co., 286 Island Road, South Thomaston, Maine after learning of the distress call. Atwood's Lobster is next door to the Spruce Head Fishermen's Co-op (hereinafter "Co-op"). Officer Stilwell boarded a private vessel that was heading out of the harbor in attempt to locate the boat that made the distress call. Officer Stillwell did not locate the vessel during his search. At approximately 8:00 a.m., the boat returned to the dock.

6. At 8:00 a.m., Officer Stillwell spoke with Nathan Libby (hereinafter "Libby") at the top of the brow at the Co-op. Libby stated he was an employee of the Co-op and provided a list of fishing boats that had gone out that morning.

7. Officer Stillwell then spoke to an individual who was parked in the Co-op parking lot. Officer Stillwell played a short clip of the distress call and asked if the individual recognized the

2

caller's voice. The individual opined that it sounded just like Nate, the dock worker with whom Officer Stillwell had just spoken.

8. Officer Stillwell returned to the Co-op office and spoke again with Libby. Officer Stillwell recorded this conversation. Libby stated he had heard parts of the distress call. Libby stated he had heard the vessel had lost its rudder and needed pumps or his pumps weren't keeping up. Officer Stillwell asked if there was a radio in the office and Libby pointed out the radio in the corner of a large room off the office. Officer Stillwell walked over to the radio and observed it was a VHF marine radio on channel 16.

9. After speaking with Libby, Officer Stillwell contacted another Maine Marine Patrol Officer and indicated that based upon speaking with Libby, he (Officer Stillwell) believed that Libby was the person who made the distress call. This other officer later listened to the distress call and the recording of the Libby interview and this officer also believed the speaker was the same on both recordings.

10. At approximately 10:57, Coast Guard personnel determined this was a probable hoax and suspended the search.

11. On December 4, 2020, Officer Stillwell received a call from Ryan Dennison who relayed that he owned a boat that also fit the description of the boat in the distress call. Mr. Dennison informed Officer Stillwell that he had listened to the distress call and that the caller sounded like a former stern man he had employed. They agreed to meet in person later in the day.

12. Officer Stillwell, another agent, and I met Mr. Denison later that day. Mr. Denison stated that he had listened to the distress call and he believed the voice sounded like Nate Libby. Mr. Dennison is familiar with Libby because Libby had been a stern man on his boat for four

years but Mr. Dennison had fired him earlier in 2020. Mr. Dennison further recounted that Libby had tried to get Dennison in a gear dispute with another fisherman earlier in the summer. Mr. Dennison confirmed that the boat described in the distress call matched his boat which he moors at Atwood Lobster Co.

13. On December 4, 2020, I also interviewed George Casey Morrill, who is referred to as "Casey." Casey told me that he is the acting manager for the Co-op. Libby works for Casey as a dock hand. Casey indicated that Libby was present at the Co-op during the time of the search and rescue. Casey indicated he had listened to the recording of the distress call and Casey indicated the voice on the call sounded like Libby.

14. As part of the investigation, I obtained surveillance footage from cameras located outside the Co-op office. The footage shows Libby is present at the Co-op office at the time the distress call is made.

15. I sent the recording of the Libby interview and 4 audio clips from the distress call to Dr. Rita Singh who is an associate research professor at the Language Technologies Institute, School of Computer Science, Carnegie Mellon University. Dr. Singh's academic career spans over two decades of research on a wide range of topics in the areas of speech and audio signal processing, multimedia forensics and cyber forensics. Her current work is focused on creating and developing the science of profiling humans from their voice, a new sub-area of Artificial Intelligence and Voice Forensics. In September 2018, her team created the world's first live voice-based profiling system. The Coast Guard and other law enforcement agencies have retained Dr. Singh as a subject matter expert on voice recognition.

16. Ms. Singh analyzed the recordings using macro-level, micro-level, and semi-automated analysis and concluded that the voice in the Libby interview and the voice in the four audio clips from the distress call originate from the same speaker.

17. The Coast Guard uses a system called Rescue 21, which is a series of radio towers along the coast that receive Marine radio channel 16 and relays them to USCG Sector Northern New England's command center in South Portland, Maine. Rescue 21 then shows a direction from the receiving radio tower towards the source of the transmission. The longer the transmission, the better chance more than one tower will pick up the source of transmission and Rescue 21 will compute a triangulated area where the call originated. The transmissions in this case, however, were so short in duration that only one tower could provide an accurate direction of the distress hoax transmission. Rescue 21 showed that the direction of the signal was from the direction of the Co-op.

18. As part of the investigation, Officer Stillwell went to the Co-op and used the radio in the office to conduct a radio check with the Coast Guard. Rescue 21 showed the direction of this radio check transmission was the same direction as the distress hoax transmission.

19. Upon receipt of the distress call, the Coast Guard launched a 47' Motor Life Boat out of Rockland, Maine which was out for 4.25 hours as part of a search and rescue effort and launched a MH60 Helicopter which was out for 5.15 hours as part of the search and rescue effort. Maine Marine patrol also launched a boat that participated in the search and rescue and several Marine Patrol officers participated in the search and rescue.

## CONCLUSION

20. Based on the facts and circumstances set forth in this affidavit, Affiant submits that there is probable cause to believe that on about December 3, 2020, Nathan Libby transmitted a

false distress signal in violation of 14 U.S.C. § 521(c). Affiant respectfully requests that this Court issue an arrest warrant for Nathan Libby.

Respectfully submitted,

Mark Root
Special Agent
United States Coast Guard Investigative Service
Portland, Maine

Sworn to telephonically and signed electronically in accordance with the requirements of Rule 4.1 of the Federal Rules of Criminal Procedure

Date: Jan 27 2021

City and state: Portland, ME

Judge's signature

John H. Rich III, U.S. Magistrate Judge
Printed name and title

6